Kyle Gurwell (SBN 289298)
Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Andre Miller, individually and on behalf of all others similarly situated, | Case No. 4:23-cv-3540 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Arizona Beverages USA LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Arizona Beverages USA LLC ("Defendant") manufactures and sells a combination of iced tea and lemonade, known as an "Arnold Palmer," in 20 oz bottles, represented as "Lite" under the Arizona brand (the "Product").

I. **CONSUMERS SEEK PRODUCTS WITH LESS SUGAR AND CALORIES**

2. Due to awareness of harms from excess calorie and sugar intake, consumers are increasingly purchasing foods which contain fewer calories and sugar.

3. Consumers "clearly link sugar to calories," and expect a food or beverage with lower sugar will have lower calories, and vice versa. N.J. Patterson et al., "Consumer understanding of sugars claims on food and drink products." Nutrition Bulletin, 37.2 (2012): 121-130.

4. The reduction in sugar and calories can help avert numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even cancer because of their relationship to obesity.

5. As "sugar avoidance [is] a macro trend 'that is here to stay and will only increase,'"

companies have sought to promote products with less sugar and fewer calories.

6. Surveys confirm a growing number of consumers are buying products with less sugar to decrease their caloric intake, with 85% doing so for health reasons and 58% for weight concerns.

## II. MISLEADING USE OF THE TERM "LITE"

7. The Product's front label statements include "Half & Half," "Iced Tea Lemonade" "Arnold Palmer" and "Lite."



8. Collins Dictionary defines "lite" as "used to describe foods or drinks that contain few calories or low amounts of sugar."

9. Dictionary.com defines "lite" as "noting a commercial product that is low in calories or low in any substance considered undesirable, as compared with a product of the same type."

10. Oxford Dictionary defines "lite" as relating to low-fat or low-sugar versions of manufactured food or drink products."

11. These definitions recognize that "lite" can be used as an absolute statement, but also as a relative statement, comparing one thing to another.

12. "Lite" is defined similarly by the Food and Drug Administration ("FDA") and considered a nutrient content claim.

13. This State has adopted all FDA rules and regulations related to use of the word "lite" and "nutrient content claims."

14. Nutrient content claims are the terms and descriptors used in labeling foods and beverages.

15. These claims are subject to federal and identical state regulations to prevent consumers from being misled where claims are used in a way that is not consistent with the message they convey to consumers. 21 C.F.R. § 101.13; 21 C.F.R. §§ 101.54-101.69 ("Subpart D – Specific Requirements for Nutrient Content Claims").

16. Federal food labeling regulations established by the Federal Food, Drug, and Cosmetic Act ("FFDCA") are incorporated into state requirements by the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq.* ("Sherman Law").

A. "Lite" is Misleading with Respect to the Product's Sugar Content

17. "Lite" is understood by consumers to indicate a product which is low in sugar.

18. However, claims that make absolute statements about the amount of sugar a product contains are prohibited.

19. While claims for the absence of ("no…"), and relative ("fewer calories," "less sugar") amounts, of calories and sugar, are authorized with restrictions, a straight "low sugar" claim, like "lite," is not allowed. 21 C.F.R. § 101.60(c).

20. The FDA warned companies making "low sugar" claims:

> The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar."
>
> While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used….
>
> FDA, Warning Letter to CK Management, Inc., May 19, 2015.

3
CLASS ACTION COMPLAINT
*Miller v. Arizona Beverages USA LLC*, No. 4:23-cv-3540

1    21.    Far from being "Lite" and low in sugar, sugar is the second most predominant ingredient in the Product by weight, listed as "HIGH FRUCTOSE CORN SYRUP (GLUCOSE-FRUCTOSE SYRUP)," a form of sugar associated with obesity and overweight.

INGREDIENTS: PREMIUM BREWED BLEND OF BLACK TEAS USING FILTERED WATER, HIGH FRUCTOSE CORN SYRUP (GLUCOSE-FRUCTOSE SYRUP), LEMON JUICE FROM CONCENTRATE, PEAR JUICE FROM CONCENTRATE, CITRIC ACID, ASCORBIC ACID (VITAMIN C), NATURAL FLAVORS, SUCRALOSE, ACESULFAME POTASSIUM, GUM ACACIA, ESTER GUM

22.    The Product's Nutrition Facts reveals thirty (30) grams of added sugar, which is 60 percent of the Daily Value ("DV").



23.    The Product is not only not 'low' in added sugars but would be considered 'high' in added sugars.

24.    While the FDA has not defined "low" claims about sugar, it has set criteria for low

4
CLASS ACTION COMPLAINT
*Miller v. Arizona Beverages USA LLC*, No. 4:23-cv-3540

and high claims for other nutrients.

25. "Low" claims are those where the amount of the nutrient is between five and seven percent of the daily value ("DV") per Reference Amount Customarily Consumed ("RACC").

26. "High" claims are those where the amount of the nutrient is at least twenty percent of the DV per RACC. 21 C.F.R. § 101.54.

27. The RACC for beverages is 360 mL (12.173 oz).

28. Based on 31g of added sugar in a serving size of 20 oz, the Product contains 19 g/sugar per RACC.

29. This means that if a comparable standard for DV of sugars was set, the Product would contain approximately 38 percent of the DV for added sugars per RACC.

30. Since the Product would contain 38 percent of the DV for sugars yet is represented as "Lite," it poses a specific a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes.

B. <u>"Lite" is Misleading with Respect to the Product's Calorie Content</u>

31. "Lite" is also understood as a "relative claim," to compare one food to another food. 21 C.F.R. § 101.56.

32. "Lite" tells consumers that consumption of the Product, when compared to other foods in its class, will contribute substantially to the reduction of calories in their diets. 21 C.F.R. § 101.60(b)(4).

33. Nutrient content claims for calories are intended to prevent consumers being deceived by a product implying it is low in calories when it is not. 21 C.F.R. § 101.60(b)(1).

34. Since the Product derives less than 50 percent of its calories from fat, the number of calories in the Product must be reduced by at least one-third (33 1/3 percent) per reference amount customarily consumed compared to an appropriate reference food. 21 C.F.R. § 101.56(b)(2).

35. Relative claims are required to have certain additional information, including "the identity of the reference food and the percentage (or fraction) of the amount of the nutrient in the reference food by which the nutrient in the labeled food differs," such as "1/3 fewer calories than (reference food)')." 21 C.F.R. § 101.13(j)(2)(i).

36. The reference food, defined as "representative of the type of food that includes the product that bears the claim…The nutrient value for the reference food shall be representative of a broad base of foods of that type; e.g., a value in a representative, valid data base." 21 C.F.R. § 101.13(j)(1)(ii)(A).

37. Relevant regulations require that the "reference food" be indicated conspicuously on the packaging so the consumer will have context for a product's claim.

38. The Product's representation as "Lite" is misleading because it does not conspicuously identify any other food.

39. The Product's representation as "Lite" is misleading because it is not low in calories.

40. The absence of a reference food may be because a single-serving bottle has almost as many calories as a can of soda, and more sugar.

41. In other words, a reference food likely does not exist for the Product because it contains an absolute, high number of calories per RACC.

### III. MISLEADING DECLARATION OF SERVING SIZE

42. The Product is sold in bottles of 20 oz. Other sizes of the Product contain misleading dual columns when that is prohibited.

43. The reference amount customarily consumed ("RACC") for non-carbonated beverages is 12 oz (360 mL).

44. The Product's 20 oz is 167 percent of the RACC, which meets the regulatory definition for a single-serving container.

45. Therefore, the serving size is "1 bottle" and not the 12-oz indicated on the Nutrition Facts. 21 C.F.R. § 101.9(b)(6).

46. However, the Nutrition Facts provides "dual column" labeling which presents consumers with the number of calories "per serving" (80) and "per container" (130).



47. Research demonstrates that package and portion sizes have a considerable impact on the amount of food consumed.

48. While a consumer may hope to consume part of the bottle – 80 calories – evidence suggests otherwise, and they will consume the entire bottle.

49. Consumers will generally consume an entire beverage when it is packaged and presented in a 20 oz bottle.

50. By presenting the Nutrition Facts in the dual column format, it is inconsistent with the information required to maintain healthy dietary practices by implying that it is reasonable to consume less than the entire container, or only 80 calories.

**PARTIES**

51. Plaintiff Andre Miller is a citizen of San Leandro, Alameda County, California.

52. Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, New York, Nassau County.

53. Arizona is a leading seller of non-carbonated beverages, known for its commitment to transparency and putting consumers first.

54. Arizona's high reputation among consumers means they are likely to trust its labeling.

55. The Product is sold to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

56. The Product is sold in various sizes, in cans and bottles of various sizes.

57. The representations are identical or substantially similar across the various sizes, because they all say "Lite" without qualifying terms or identification of reference foods and use the misleading dual columns on the Nutrition Facts, among other identical labeling elements.

58. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores of the type people buy such beverages at between August 2020 and the present.

59. Plaintiff read and relied on the word "Lite" on the front label and believed the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

60. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

61. Plaintiff bought the Product at or exceeding the above-referenced price.

62. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading or would not have purchased it.

63. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

64. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

65. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its attributes, features, and/or composition.

66. Plaintiff is unable to rely on the representations not only of this Product, but other similar non-carbonated beverages that are represented as low in sugar and calories and lower in sugar and calories than comparable beverages, because he is unsure whether those representations are truthful.

67. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other such products.

68. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1.99 for 20 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION AND VENUE

69. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

70. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

71. Plaintiff is a citizen of California.

72. Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, Nassau County, New York.

73. The managing members of Defendant are citizens of New York.

74. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

75. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years with the labeling shown here in thousands of grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online across the State.

76. Venue is in this District because Plaintiff resides in this District in Alameda County and a substantial part of the events or omissions giving rise to these claims occurred in Alameda County, including Plaintiff's purchase and/or use of the Product and exposure to its labeling, and

awareness and/or experiences described here, that it was not low in sugar and calories and lower in sugar and calories than comparable beverages.

77. This Court has personal jurisdiction over Defendant because it transacts business within this State and sells the Product to consumers throughout this State.

## Divisional Assignment

78. Pursuant to Civil L.R. 3-2(c) and (e), this Action should be assigned to the San Francisco or Oakland Division.

79. This is because a substantial part of the events or omissions giving rise to these claims occurred in Alameda County, including Plaintiff's purchase and/or consumption or use of the Product and awareness and/or experiences of and with the issues described here.

## CLASS DEFINITION AND ALLEGATIONS

80. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **California Class:** All persons in California who purchased the Product during the statutes of limitations for each cause of action alleged.

81. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

82. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

83. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

84. Plaintiff is an adequate representative because his interests do not conflict with other members.

85. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

86. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

87. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

88. Plaintiff seeks class-wide injunctive relief because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200, *et seq.*

89. Plaintiff incorporates all preceding paragraphs.

90. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

91. Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

    a. 21 U.S.C. § 343(a), which deems food misbranded when the label is "false or misleading in any particular"; and

    b. 21 C.F.R. § 101.13 and 21 C.F.R. §§ 101.54-101.69, which address nutrient content claims, including 21 C.F.R. § 101.56 and 21 C.F.R. § 101.60, which relate to relative food labeling claims and claims related to reduction in calories and/or sugar.

92. Defendant's conduct is "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

93. Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

    a. Section 110111 (adopting all FDA nonprescription drug regulations as state regulations);

    b. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or

suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

    c.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

    d.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

    e.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."); and

    f.    Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

94. Each of the challenged statements and omissions made and actions taken by Defendant as described herein violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

95. Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations and omissions that caused consumers to believe the Product was low in sugar and calories and lower in sugar and calories than comparable beverages.

96. Defendant made express and implied representations that the Product was low in sugar and calories and lower in sugar and calories than comparable beverages.

97. Defendant is aware of the representations and omissions it has made about the Product and that it is not low in sugar and calories nor lower in sugar and calories than comparable beverages.

98. Had Plaintiff been aware of Defendant's practices, he would not have purchased the Product or paid as much, suffering damages.

99. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

## SECOND CLAIM
### Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

100. The FAL prohibits "mak[ing] any false or misleading advertising claim."

101. Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers about how the Product was low in sugar and calories and lower in sugar and calories than comparable beverages.

102. In reliance on this false and misleading advertising, Plaintiff purchased and used the Product without knowledge it was not low in sugar and calories and lower in sugar and calories than comparable beverages.

103. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

104. Plaintiff and Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## THIRD CLAIM
### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

105. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

106. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

    a. Civil Code § 1770(a)(5), because Defendant represented that the

        Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it did not have;

   b.    Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

   c.    Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

107. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

108. If Defendant does not correct these business practices, Plaintiff will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

109. If Defendant does not correct these business practices, Plaintiff will request injunctive relief and ask that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

## FOURTH CLAIM
### Breaches of Express Warranty and
### Implied Warranty of Merchantability/Fitness for a Particular Purpose

110. The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it was low in sugar and calories and lower in sugar and calories than comparable beverages.

111. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

112. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

113. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood "Lite" to mean it was low in sugar and calories and lower in sugar and calories than comparable beverages.

114. Defendant's representations affirmed and promised that the Product was low in sugar and calories and lower in sugar and calories than comparable beverages.

115. Defendant described the Product so Plaintiff believed it was low in sugar and calories and lower in sugar and calories than comparable beverages, which became part of the basis of the bargain that it would conform to its affirmations and promises.

116. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

117. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand of non-carbonated beverages and the official, licensed seller of half iced tea and half lemonade under the "Arnold Palmer" name.

118. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

119. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

120. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

121. The Product did not conform to its promises or affirmations of fact due to Defendant's actions.

122. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if was low in sugar and calories and lower in sugar and calories than comparable beverages.

123. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was low in sugar and calories and lower in sugar and calories than comparable beverages, and he relied on

Defendant's skill and judgment to select or furnish such a suitable product.

## FIFTH CLAIM
### Unjust Enrichment

124. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, pray for judgment and relief as follows:

A. Certification of the Class, designating Plaintiff as representative of the Class and Plaintiff's Counsel as counsel for the Class;

B. A declaration that Defendant has committed the violations alleged;

C. For injunctive relief the Court deems appropriate;

D. For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E. Compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

F. For punitive damages;

G. For attorneys' fees;

H. For costs of suit incurred;

I. For pre- and post-judgment interest; and

J. For such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so triable.

Dated:   July 17, 2023

                                        Respectfully submitted,

                                        /s/ Kyle Gurwell
                                        Kyle Gurwell (SBN 289298)

Law Office of Kyle Gurwell
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

Spencer Sheehan (*Pro Hac Vice* Forthcoming)
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff and Proposed Class*